IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-01103-REB-BNB

KENNETH WARE,

Plaintiff,

v.

DENVER HEALTH, d/b/a DENVER CARES, and
MARK WRIGHT,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Denver Health's Second Motion for Sanctions for Newly Discovered Additional False Discovery Response and False Affidavit By Plaintiff, Or Alternatively, To Allow Additional Discovery** [Doc. # 66, filed 4/16/2010] (the "Second Motion for Sanctions"). I held a hearing on the Second Motion for Sanctions on May 25, 2010, and took the matter under advisement. I respectfully RECOMMEND that the Second Motion for Sanctions be GRANTED and that the plaintiff's claims and this action be dismissed with prejudice as a sanction for the plaintiff's abusive litigation practices.

I.

Defendant Denver Health previously sought sanctions against the plaintiff for falsely answering an interrogatory. See Denver Health's Motion for Sanctions [Doc. # 53, filed 3/17/2010] (the "First Motion for Sanctions"). Specifically, Denver Health inquired:

> Interrogatory No. 3. Describe in detail your medical and mental
> health histories from January 1, 2007, to the present, including,
> without limitation, identification of all health care providers

(including but not limited to medical doctors and mental health
professionals) whom you have seen or consulted during that
period, specifically stating whether you have seen or consulted that
health care provider with respect to any pain and suffering,
inconvenience, impairment or quality of life, stress, or any other
non-economic damages.

Plaintiff's Answers to Interrogatories [Doc. # 83-4] at p. 4.

The plaintiff responded to the interrogatory under oath on December 29, 2009:

I spoke to a counselor on one occasion, right after I was
terminated, with Denver Health's Employee Assistance Program.
I do not recall his name and I have seen no one else since January
1, 2007.

Id.

The answer turned out to be false. In fact, the plaintiff was terminated from Denver Health on May 8, 2008. On May 22, 2008, he was involved in an automobile accident.[1] After Denver Health learned of the auto accident and subsequent medical treatment received by the plaintiff in connection with that accident, and after Denver Health filed its First Motion for Sanctions, the plaintiff supplemented his discovery response as follows:

I saw the following for injuries to my neck and back arising from
my automobile accident in 2008. I did not consult with them for
any emotional injuries.

1. Premier Care, 2149 S. Holly St., 303-338-15600.

2. Dr. Augustine Obinnah, Green Valley Ranch Medical Clinic,
4809 Argonne St., Suite 100, Denver, CO 80249, 303-344-8700.

3. Emergency room at University Hospital, Fitzsimmons Campus.

Plaintiff's Supplemental Answers to Interrogatories [Doc. # 83-4] at pp. 11-12.

---

[1] The plaintiff filed suit in connection with the auto accident in Denver District Court on August 3, 2009. Complaint and Jury Demand [Doc. # 83-4] at pp. 7-10.

The plaintiff attempted to excuse his false answer as follows:

> [A]lthough the [interrogatory] began with a request to have Mr. Ware describe his medical history, the second part of the question focused on the emotional injury he claimed in the instant case. Therefore, the interrogatory was not as perfectly clear as defendant states on page 6 of its Motion.
>
> * * *
>
> Given this context, Mr. Ware assumed in the above interrogatory that Denver Health was only inquiring about his psychological injuries and he answered accordingly.

Response to [First] Motion for Sanctions [Doc. # 61, filed 3/31/2010] at p. 2.

I found the plaintiff's excuse to be unreasonable in view of the clear language of the interrogatory, and I found that the plaintiff was culpable in failing to accurately and fully answer the interrogatory. I granted the First Motion for Sanctions to reopen discovery to allow Denver Health to inquire about the additional medical care, and I ordered the plaintiff to pay Denver Health's costs and attorney fees in bringing the First Motion for Sanctions, finding that these sanctions were sufficient to cure any harm resulting from the plaintiff's incomplete and false interrogatory answer. See Order [Doc. # 64, entered 4/2/2010].

II.

Two weeks later Denver Health brought its Second Motion for Sanctions. The Second Motion for Sanctions is based on three categories of alleged misstatements by the plaintiff.

A. The Plaintiff's Post-Termination Employment

First, Denver Health argues that the plaintiff failed to answer truthfully the following interrogatories about subsequent employment:

> 4. Describe all efforts which you have made since leaving [Denver Health's] employment to find alternative employment, including identification of each potential employer to whom you submitted a resume or application, each potential employer who made an offer

of employment to you, identification of all of your employers after
leaving [Denver Health's] employment, and a description of your
job duties and rate of pay at each such job.

5.  Identify all persons or entities by whom you have been
employed or for whom you have otherwise provided services for
financial consideration since your resignation from Denver Health,
and for each state your dates of employment and your
compensation.

Second Motion for Sanctions [Doc. # 66] at pp. 2-3. The plaintiff answered, under oath, on

December 29, 2009, as follows:

> **Response** [4]. I applied for employment at Arapahoe House, but
> did not receive it. I then applied to the University of Colorado at
> Denver, ARTS Program. I did not receive the first position I
> applied for with them, but I received the second position I applied
> for.
>
> **Response** [5]. I started working as a counselor for the above
> ARTS Program on June 22, 2008. My gross income is
> approximately $2,700 per month.

Id.

These responses are rendered false by their lack of completeness. On April 15, 2010, the

day before Denver Health's Second Motion for Sanctions was filed, the plaintiff again

supplemented his interrogatory answers, Plaintiff's Second Supplement to Interrogatories [Doc.

# 76-1] (the "Second Supp."), and admitted to the following additional employment responsive

to Interrogatories 4 and 5:

> **Response** [5].  . . . I had been working, on a contract basis, with
> The Road Called Strate from early 2008, with whom I was paid
> $50 for conducting a DUI education class. I conducted fewer than
> 10 classes for them prior to leaving Denver CARES and probably
> fewer than five classes after leaving Denver CARES--I don't recall
> doing any classes with them from when I left Denver CARES until
> when I began working at CU. I also conducted up to five classes
> with them for no pay. I haven't worked for them since

4

> approximately July, 2009. I also worked as a mental health worker for Hospital Shared Services since September, 2007, being paid approximately $12.00 per hour. Hospital Shared Services is located at 900 S. Broadway, Suite 100, Denver, CO 80209. Prior to leaving Denver CARES I worked approximately eight 12-hour shifts per month with HSS and since leaving Denver CARES I have worked approximately 1 shift per month and still work occasionally with them.

Id. at pp. 1-2.

At the hearing on the Second Motion for Sanctions, the plaintiff testified that prior to his auto accident on May 22, 2008, he worked two to three 12-hour shifts per week at Hospital Shared Services ("HSS"). Recording of Proceedings, May 25, 2010 (the "Rec."), at 1:45:59 p.m. to 1:46:19 p.m. In addition, during the two week period between the date the plaintiff was fired from Denver Health and his auto accident (May 8, 2008, to May 22, 2008), he presented four or five alcohol related seminars for a community service organization known as The Road Called Strate for which he was paid $50 per seminar and received a $50 gasoline stipend. Id. at 2:02:30 p.m. to 2:03:30 p.m. The plaintiff worked fewer shifts at HSS after the auto accident, id. at 1:45:59 p.m. to 1:46:19 p.m., and he has not worked at all for The Road Called Strate after the auto accident. Id. at 2:15:00 p.m. to 2:15:15 p.m.

Denver Health also claims that the plaintiff lied in an affidavit submitted to the court as an attachment to his opposition to the First Motion for Sanctions. Specifically, in the plaintiff's Fourth Affidavit [Doc. # 61-1, filed 3/31/2010] ("4th Ware Aff."), the plaintiff stated:

> I had an automobile accident on May 22, 2008, a few weeks after I lost my job at Denver CARES. I started a new job on June 26, 2008. The injuries from my automobile accident concerned injuries to my back and neck. Although I could not have worked for several weeks due to this automobile accident, **I was between jobs anyway**.

5

Id. at ¶1 (emphasis added).

Denver Health contends that the plaintiff's statement that he was "between jobs" at the time of the auto accident is not true because at that time he was working, at least part-time, for HSS and The Road Called Strate. I am not convinced that the Fourth Affidavit states a falsehood. The evidence establishes that the plaintiff was "moonlighting" at HSS and The Road Called Strate prior to being terminated from Denver Health. Second Supp. [Doc. # 76-1] at pp. 1-2. Neither HSS nor The Road Called Strate was full time employment, and the plaintiff was looking for a full time job after he was terminated from Denver Health. Second Motion for Sanctions [Doc. # 66] at pp. 2-3. The plaintiff was "between" full time employment at the time of the accident.

### B. The Plaintiff's Criminal History

Denver Health also asserts that the plaintiff lied during his deposition concerning his criminal history. In the deposition, the plaintiff stated:

> Q: [By Mr. Johnson] All right. Have you ever been convicted of a felony?
>
> A: [By the Plaintiff] I have.
>
> Q: And what was that?
>
> A: Possession.
>
> Q: Possession of what?
>
> A: Of a controlled substance.
>
> Q: And what controlled substance?
>
> A: Possession of a control sub--what controlled substance?
>
> Q: Yes.

>            A:      Cocaine.
>                            *    *    *
>            Q:      Is that the only criminal offense you've been convicted of?
>
>            A:      It is not.
>
>            Q:      Okay. What other criminal offenses have you been convicted of?
>                            *    *    *
>            A:      Forgery and possession.
>
>            Q:      Okay. When was the forgery conviction?
>                            *    *    *
>            A:      1987.

Deposition of Kenneth Wayne Ware [Doc. # 66-5] ("Ware Depo.") at p. 8 line 15 through p. 10 line 9.

In addition to the 1987 and 1995 convictions about which the plaintiff testified, he also pled guilty and was convicted in 1984 of attempted theft. Request to Plead Guilty [Doc. # 66-6]. The testimony concerning the plaintiff's criminal record is confused, however, in part because several of the convictions occurred more than 20 years ago. Although the plaintiff failed to identify each of his convictions, I find that his failure to specifically identify the 1984 conviction during a deposition taken in 2009 is excusable.

### C.  Misstatements By the Plaintiff In His State Case Deposition

Finally, Denver Health asserts that the plaintiff lied in his deposition in the auto accident case when he testified that he left his employment at Denver Health because he "chose to get another job." Deposition of Kenneth W. Ware [Doc. # 66-1] ("Ware State Depo.") at p. 6 lines 21-24. Later in the same deposition, the plaintiff testified that he was asked to leave his employment at Denver Health. Id. at p. 20 lines 10-14. I do not agree that the plaintiff should be

sanctioned in this case for giving misleading testimony in another case which was promptly corrected.

I find that the plaintiff has made two materially false statements in connection with his prosecution of this case. First, in his response to Interrogatory No. 3 the plaintiff lied about his medical treatment.[2] Second, in his responses to Interrogatories No. 4 and 5 the plaintiff lied about his employment after leaving Denver Health. The lies go directly to the issue of the plaintiff's damages. His failure to disclose his medical treatment is tied directly to the plaintiff's claims for lost wages during a time when he could not work due to injuries from the auto accident, and also to the source of the plaintiff's alleged emotional damages. His failure to disclose his post-termination employment is relevant to the issue of the plaintiff's mitigation of his alleged lost wages.

III.

The issue presented is whether the plaintiff should be further sanctioned for these lies and, if so, the nature of the sanction. Denver Health asks that the plaintiff's case be dismissed as a sanction. Second Motion for Sanctions [Doc. # 66] at p. 7. Absent dismissal, Denver Health requests a sanction "striking Mr. Ware's claim for monetary damages. . . ." Id. Alternatively, Denver Health asks that it be allowed to conduct additional discovery regarding the plaintiff's employment at HSS and The Road Called Strate.

To begin, I categorically reject the notion, offered only half in jest, that "it is okay to lie

---

[2]I recognize that this misstatement was the subject of the First Motion for Sanctions and was addressed by my previous Order [Doc. # 64]. The first misstatement provides context for the Second Motion for Sanctions, however, and should not be ignored, particularly because it shows a pattern of dishonesty by the plaintiff.

about the major issues in the lawsuit, such as whether you were injured, but not about minor issues, for example, whether you have produced all relevant documents." Charles Yablon, *Stupid Lawyer Tricks: An Essay on Discovery Abuse*, 96 COLUM. L. REV. 1618, 1632 (1996).

The law applicable to the Second Motion for Sanctions was recently stated by the Tenth Circuit Court of Appeals in Garcia v. Berkshire Life Ins. Co. of America, 569 F.3d 1174, 1179 (10th Cir.):

> A district court has inherent equitable powers to impose the sanction of dismissal with prejudice because of abusive litigation practices during discovery. Because of the harshness of dismissal, however, due process requires that the violation be predicated upon willfulness, bad faith, or some fault of petitioner rather than inability to comply. While recognizing that there is no rigid test for determining when such a sanction is appropriate, we have suggested that a district court ought to evaluate five factors before imposing a dismissal sanction: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.

(Internal quotations and citations omitted.)

In applying this five part test, I am mindful of the teachings of Schmidt v. Ford Motor Co., 112 F.R.D. 216, 221 (D. Colo. 1986):

> Despite the barriers of technicality and quiddities of procedure which infuse our legal system, at enormous cost, to insure that litigation constitute a search for the truth, our ultimate reliance must be found in mutual trust and decency. . . . [L]itigation is not a game of hare and hounds where rules are easily bent, where truth is skirted by lies and evasions and cheap victory is sought at the expense of fairness and candor. Even if the cynics are correct in saying that such practices are endemic to the system, it is necessary to say in this case that they will not be tolerated.

The court in Pope v. Federal Express Corp., 138 F.R.D. 675 (W.D. Mo. 1990), aff'd in

9

part and vacated in part 974 F.2d 982 (8th Cir. 1992), made the point more directly:

> Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. **Litigants must know that the courts are not open to persons who would seek justice by fraudulent means**.

Id. at 683 (emphasis added).

A. Degree of Actual Prejudice

Denver Health has suffered substantial prejudice. This is not a case where the plaintiff came forward of his own volition and corrected a misstatement. To the contrary, the plaintiff answered Interrogatories No. 3, 4, and 5 dishonestly and with knowledge that the answers were not true. The plaintiff's false evidence came to light only through fortuity and the diligence of Denver Health. In particular:

> In February of this year [after the discovery cut-off in this case], Denver Health was contacted by the law firm of Anderson Hemmat Levine, LLC, who stated that they represent Mr. Ware in connection with injuries he sustained in an automobile collision on May 22, 2008. That date is roughly two weeks after Mr. Ware's termination from Denver Health. [Denver Health's] counsel learned of this letter and thereafter obtained a copy of a complaint filed by Mr. Ware regarding that automobile accident. . . .

First Motion for Sanctions [Doc. # 53] at p. 3.

Once Denver Health learned of the auto accident and the related lawsuit, it was able to confront the plaintiff about his false statement concerning medical care. It also was able to obtain, on April 14, 2010, a transcript of the plaintiff's deposition taken in the auto accident case, where the plaintiff testified about his employment with The Road Called Strate, which he had failed to disclose in this case. <u>See</u> Ware State Depo. [Doc. # 66-1] at pp. 7-15. That led to the plaintiff's belated Second Supplement to Interrogatories [Doc. # 76-1], made on April 15, 2010, where the plaintiff finally disclosed the details of his post-termination employment with HSS and The Road Called Strate.

The plaintiff's misconduct has required Denver Health to conduct additional investigation outside of the normal channels of civil discovery to learn the truth about the plaintiff's health and employment status, both of which are central to the plaintiff's damage claims in this case and Denver Health's defense to the plaintiff's claimed damages. After learning of the plaintiff's misstatements, Denver Health was required to file <u>two</u> motions for sanctions. All of this has been at tremendous effort and expense to Denver Health.

It is no answer to say that there is no prejudice to Denver Health because it learned of the plaintiff's lies before trial and in sufficient time to take further discovery and learn the truth. The purpose of civil discovery is to allow a party to obtain information from its opponent and prepare the case for trial. The civil justice system depends on the litigants' ability to rely on the truth of discovery responses. <u>Schmidt v. Ford Motor Co.</u>, 112 F.R.D. at 221 (noting that litigation is a search for the truth and that "our ultimate reliance must be found in mutual trust and decency"). A litigant should not be required to probe beneath its opponent's sworn discovery responses to learn the truth.

B. Interference With the Judicial Process

Lying in discovery infects the entire pretrial process and interferes egregiously with the administration of justice. Denver Health has been required to file two motions for sanctions, each of which has required a hearing. The pall of the plaintiff's dishonesty lies over the entirety of these proceedings.

As the court stated in Eppes v. Snowden, 656 F. Supp. 1267, 1277 (E.D. Ky. 1986):

> [T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

C. Culpability of the Plaintiff

I find that the plaintiff intentionally lied in his Answers to Interrogatories, and he did so to gain an advantage. In making this finding, timing is important.

In this case, the plaintiff may recover more damages if he was not employed after he was terminated from Denver Health. The plaintiff's Answers to Interrogatories, made under oath on December 29, 2009, take that position, failing to report two employers, HSS and The Road Called Strate. In the auto accident case, by contrast, the plaintiff may recover more damages if he was employed at the time of the accident. The plaintiff's deposition testimony in the auto accident case, given on March 26, 2010, takes that position, where the plaintiff discloses (and overstates[3]) his employment with The Road Called Strate. Thus, the plaintiff bent the truth about

---

[3]In his deposition in the auto accident case, the plaintiff testified that on May 22, 2008, he "was to go full time or take even more than 20 hours per week" at The Road Called Strate. Ware State Depo. [Doc. # 66-1] at p. 13 lines16-24. At the hearing on the Second Motion for Sanctions, however, the plaintiff's supervisor at The Road Called Strate (James Thomas)

the status of his employment depending on whether it helped or hindered his case.

Moreover, the plaintiff waited an additional three weeks after his deposition in the auto accident case before disclosing the additional employment in this case--from March 26, 2010, until April 15, 2010. Between the date of the plaintiff's answers to Denver Health's interrogatories in this case (December 29, 2009) and the date of his deposition in the auto accident case (March 26, 2010), Denver Health filed its First Motion for Sanctions [Doc. # 61, filed 3/17/2010]. Thus, the plaintiff knew that Denver Health was onto his deceptions at the time of his deposition in the auto accident case. Nevertheless, he delayed an additional three weeks, until April 15, 2010, apparently waiting to see if Denver Health would discover his second lie, before he disclosed in this case his previously concealed employment with HSS and The Road Called Strate. See Plaintiff's Second Supplement to Interrogatories [Doc. # 76-1] at pp. 1-2.

The plaintiff's willingness to lie in this case to minimize his employment status and to lie in the auto accident case to maximize his employment status, to achieve an advantage in each case, demonstrates the greatest culpability possible.

---

testified that there was no expectation on May 22, 2008 that the plaintiff would work 40 hours per week. Rec. at 2:20:27 p.m. to 2:20:40 p.m. Instead, Mr. Thomas testified:

> We discussed 20 [hours per week], you know, as a starting, you know, but we didn't never get--that was like one conversation. You know, there was times when we had to chat and have expectations as far as dreams and, you know, growing and participating in the program. But that was all it was. We didn't put anything down in concrete. . . .

Id. at 2:20:45 to 2:21:25 p.m.

13

### D. Whether the Plaintiff Was Warned

There was no prior warning to the plaintiff of the possible sanction of dismissal. No such warning is necessary here, where the false interrogatory answers were made under oath:

> [B]ecause the perjurious testimony was given under oath, an additional warning would have been superfluous at best. Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth. It would render the sanctity of the oath quite meaningless to require admonition to adhere to it.

Chavez v. City of Albuquerque, 402 F.3d 1039, 1045 (10th Cir. 2005)(internal quotation and citation omitted).

### E. The Efficacy of a Lesser Sanction

The egregious nature of the plaintiff's lies to advance his case requires dismissal. I have considered imposition of lesser sanctions. Reopening discovery and imposing the costs of that discovery against the plaintiff is inadequate to address the severity of the misconduct. In addition, the plaintiff is unable to pay a monetary sanction. See Response to Denver Health's Application for Award of Attorney Fees [Doc. # 78, filed 5/14/2010] at pp. 2-3 (stating that the plaintiff cannot pay a monetary sanction of $3,600 sought in connection with the First Motion for Sanctions). Striking the plaintiff's claim for monetary damages or excluding the plaintiff's testimony at trial are effectively the same as dismissal of the case, but they fail to adequately condemn the serious misconduct of lying under oath in pretrial discovery to gain an advantage. Indeed, I conclude that no sanction short of dismissal will serve as a universal notice that lying to advance a litigant's cause will not be tolerated and that "the courts are not open to persons who would seek justice by fraudulent means." Pope, 138 F.R.D. at 683.

The circuit court has approved the sanction of dismissal under similar facts. In

Archibeque, the plaintiff sought damages from a railway company for personal injuries allegedly sustained while working for the company. 70 F.3d at 1173. In her responses to discovery, the plaintiff withheld information about prior related injuries. Id. Although the plaintiff claimed that the failure to disclose was a mere oversight, the district court disagreed and granted dismissal as a sanction. Id. at 1175. The circuit court affirmed. Id.

And in Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992), the circuit court affirmed dismissal as a sanction in a case involving a discovery violation less egregious than those presented here. In Ehrenhaus, the district court dismissed the case based on the plaintiff's failure to attend his deposition. The plaintiff attempted to excuse his failure to sit for the deposition, arguing that he needed to attend a business meeting in New York to "save his business from bankruptcy." Id. at 919. There was no indication in the Ehrenhaus case, however, that the plaintiff intentionally submitted false evidence or deceived his opponent or the court, as has occurred here. The circuit court nonetheless affirmed the sanction of dismissal.

## IV.

I respectfully RECOMMEND that the Second Motion for Sanctions be GRANTED and that the plaintiff's claims and this action be DISMISSED WITH PREJUDICE as a sanction for the plaintiff's abusive litigation practices.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.

Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated May 28, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge