**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 09-cv-01103-REB-BNB

KENNETH WARE,

     Plaintiff,

v.

DENVER HEALTH, d/b/a DENVER CARES, and
MARK WRIGHT,

     Defendants.

---

### ORDER GRANTING DENVER HEALTH'S MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

The matters before me are (1) defendant **Denver Health's Motion for Summary Judgment** [#49][1] filed February 12, 2010; and (2) plaintiff's **Amended Motion for Leave To File Second Supplement to Response Brief** [#93] filed June 9, 2010.  I deny the motion to supplement and grant the motion for summary judgment.[2]

### I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question).

### II.  STANDARD OF REVIEW

---

[1]  "[#49]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2]  The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999).

## III. ANALYSIS

Plaintiff was formerly employed by Denver CARES as a Certified Addictions Counselor III. In May, 2008, he was fired for violating defendant's policy regarding violence in the workplace following an in-office confrontation with a co-worker, Darice James. Plaintiff's direct supervisor, Ora Watson, investigated the incident, taking statements from plaintiff and James, as well as another employee, Rita Roberts, who was present. Watson found that following an initial confrontation between plaintiff and James, in which plaintiff made comments about James's family and violently pushed several charts off her desk, plaintiff took James's purse from her office. When she found the purse missing, James called security, and plaintiff returned the purse. Several minutes later, however, plaintiff confronted James in her office while Roberts was present. Their interaction eventually escalated into loud yelling, and plaintiff slammed his hand on the desk. When James attempted to leave, plaintiff prevented her from doing so, and Roberts put herself between James and plaintiff. Plaintiff was fired the following week. (*See* Def. Motion App., Exh. 28 at 2-4.)

On June 9, 2010, nearly three months after he filed his response to the summary judgment motion, plaintiff filed a motion to supplement the record with an affidavit executed by James, whom he claims he was unable to locate until that date. Although I previously allowed plaintiff to supplement his response by the submission of Roberts's affidavit (*see* **Minute Order** [#59] entered March 29, 2010), I decline to exercise my discretion in that regard in this instance. Plaintiff knew in July, 2009, that James, a percipient witness to the event central to his claims, had relocated to Texas, yet his

response to the summary judgment motion never mentioned her testimony or requested leave pursuant to Fed.R.Civ.P. 56(f) to attempt to secure it.  Nor has plaintiff described what efforts he made to locate James once he realized that she had left the Denver area.  Unable to conclude that plaintiff exercised appropriate diligence in securing James's affidavit, I decline his request to further supplement the record.[3]

Plaintiff's sole remaining claim in this lawsuit is for retaliatory termination under Title VII.  To prove this claim, plaintiff must establish a *prima facie* case by showing (1) that he engaged in protected activity under Title VII; (2) that he suffered an adverse employment action; and (3) that there is a causal connection between the two.  ***See Gunnell v. Utah Valley State College***, 152 F.3d 1253, 1263 (10th Cir. 1998).  If these elements are established, the employer has the burden to proffer a legitimate, nondiscriminatory reason for its decision.  ***Pastran v. K-Mart Corp.***, 210 F.3d 1201, 1206 (10th Cir. 2000).  The burden then shifts back to plaintiff to demonstrate that this reason is pretextual.  ***Id.***  A plaintiff may demonstrate pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  ***Id.*** (citation and internal quotation marks omitted).  Because plaintiff's evidence utterly fails to demonstrate a triable issue of fact regarding the element of causation or the issue of pretext, defendant's motion for summary judgment must be granted.

---

[3]  Moreover, James's testimony merely attempts to dispute defendant's interpretation of the events in which she was involved and offers yet more of the conjecture and supposition that plaintiff himself presents in response to defendant's motion.  As discussed more fully below, this type of "evidence" is not sufficient to withstand a properly supported motion for summary judgment.

Initially, I note that the alleged protected activity in this case – a charge of discrimination filed in January, 2007 – occurred nearly 18 months prior to plaintiff's termination. Although not dispositive, such temporal distance makes it that much more difficult for plaintiff to establish the requisite causal connection. *See Clark County School District v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (temporal proximity between opposition and adverse action must be "very close" to warrant a conclusion of causality); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (lapse of three months insufficient). Of course, a lack of temporal proximity may not attenuate an inference of retaliatory motive when a plaintiff can establish a pattern of retaliatory conduct that began soon after his complaints and only ultimately culminated in his termination. *See Meiners v. University of Kansas*, 359 F.3d 1222, 1231-32 (10th Cir. 2004); *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir.), *cert. denied*, 116 S.Ct. 2552 (1996). Nevertheless, plaintiff points to only two other disciplinary actions post-dating his charge of discrimination by six and twelve months, respectively, and predating his termination by five and eleven months, respectively. As the Tenth Circuit has noted in factually congruent circumstances,

> Two instances . . . that occur four months apart do not constitute a particularly impressive "pattern of retaliatory conduct." In addition, the pattern did not begin soon after [plaintiff] engaged in protected activity, as almost four months elapsed between the [protected activity] and the [adverse employment action]. This so-called "pattern" therefore does not support an inference of a causal connection.

*Meiners*, 359 F.3d at 1232.

Aside from the lack of temporal proximity between plaintiff's protected activity

and the adverse employment decision, it is important to note that plaintiff does not deny

any of the underlying incidents that informed the decision to terminate his employment.

Instead, he disputes defendant's interpretation of those events and the seriousness of

the offenses.  For example, plaintiff suggests that Watson knew that he and James

were friends who often engaged in teasing and banter and that he had a loud voice and

was an emotional person.  He further points out that the confrontation did not become

physical.[4]  Plaintiff offers no actual evidence to support his subjective conclusions in this

regard.[5]  More importantly, his mere disagreement with defendant's conclusions about

the seriousness of the offense is insufficient to make out a jury issue as to pretext.  The

pertinent question is not "whether the employer's proffered reasons were wise, fair or

correct, but whether [it] honestly believed those reasons and acted in good faith upon

those beliefs."  *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir.

2004) (citation, internal quotation marks, and alterations omitted).  *See also Young v.

Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (court's "role is not to act as a

super personnel department, second guessing employers' honestly held (even if

erroneous) business judgments.") (citation and internal quotation marks omitted); *Furr*

*v. Seagate Technology Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) ("It is the [employer's]

---

[4]  Plaintiff makes similar arguments regarding the other disciplinary offenses in his employment record.  He maintains that unspecified nurses and counselors at Denver CARES regularly allowed clients to have food in the dorms, the infraction for which he was disciplined in June, 2007, despite corporate policy to the contrary.  However, he fails to demonstrate that Mark Wright, the alleged retaliator, or any other supervisor was aware of such breaches.  Similarly, plaintiff's attempt to minimize his own failure to complete patient charts, the infraction for which he was disciplined in December, 2007, misconstrues the nature of the misconduct for which he was found responsible.

[5]  Roberts's affidavit testimony, which similarly disputes defendant's interpretation of events, adds no more ballast to plaintiff's arguments than his own subjective beliefs.

perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance."), **cert. denied**, 117 S.Ct. 694 (1997). Nothing in plaintiff's unsubstantiated testimony is sufficient to create a genuine issue of material fact as to whether defendant's proffered reasons were pretextual.

Finally, plaintiff has failed to produce sufficient evidence to demonstrate that the only person he believes retaliated against him, defendant Mark Wright, was involved in the decision to terminate him at all. Plaintiff attempts circumnavigate lacuna in his evidence by averring that at his disciplinary hearing in December, 2007, he overheard Wright say that he wanted plaintiff to lose his job.[6] He further asserts that "[a]lthough I do not believe that Ms. Watson discriminated against me because of my race, I believe that she did things regarding me in order to please Mr. Wright." (Plf. Resp. App., Exh. 1 ¶ 4 at 2 & ¶ 9 at 4.)

Although the Tenth Circuit recognizes the "cat's paw" doctrine,[7] which allows an inference of discrimination when "a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action," **EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles**, 450 F.3d 476, 484 (10th Cir. 2006), **cert. dism'd**, 127 S.Ct. 1931 (2007), the

---

[6] Of course, plaintiff did not lose his job based on that incident, which further undercuts any inference that Wright's desires had any impact on plaintiff's employment status whatsoever.

[7] "The 'cat's paw' doctrine derives its name from a fable, made famous by La Fontaine, in which a monkey convinces an unwitting cat to pull chestnuts from a hot fire. As the cat scoops the chestnuts from the fire one by one, burning his paw in the process, the monkey eagerly gobbles them up, leaving none left for the cat. Today the term 'cat's-paw' refers to one used by another to accomplish his purposes." **E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles**, 450 F.3d 476, 484 (10th Cir. 2006). **cert. dism'd**, 127 S.Ct. 1931 (2007) (internal citations and quotation marks omitted).

doctrine does not operate in reverse, as plaintiff's theory would have it.[8]  Plaintiff offers

little to support his conclusions beyond yet more unsubstantiated suppositions regarding

Watson's motivations.[9]  Plaintiff cannot pile supposition on inference on conjecture and

call the result "circumstantial evidence" in an attempt to create a fact issue for trial.

Untethered from any concrete facts, plaintiff's subjective beliefs are not competent

summary judgment evidence.  **See Rice**, 166 F.3d at 1092; **Nutting**, 106 F.Supp.2d at

1123.

     **THEREFORE, IT IS ORDERED** as follows:

     1.  That defendant **Denver Health's Motion for Summary Judgment** [#49] filed

February 12, 2010, is **GRANTED**;

     2.  That plaintiff's **Amended Motion for Leave To File Second Supplement to

Response Brief** [#93] filed June 9, 2010, is **DENIED**;

     3. That **Denver Health's Second Motion for Sanctions for Newly Discovered

Evidence Additional False Discovery Response and False Affidavit by Plaintiff, or

Alternatively, To Allow Additional Discovery** [#66] filed April 16, 2010, is **DENIED

AS MOOT**;

4.  That the concomitant **Recommendation of United States Magistrate

Judge** [#84] filed May 28, 2010, is **VACATED AS MOOT**, and the objections in

---

    [8]  Nor is there any evidence that Wright had any input into the termination decision or influence over anyone who actually was involved in that decision, which was made initially by Greg Rossman, Chief Human Resources Manager, and later was approved by Denver Health's chief operating officer and a member of the legal department.

    [9]  Although Roberts claims that Watson threatened to fire her if she did not provide a statement about the incident, she does not assert that Watson directed her to lie or that her statement was otherwise untruthful.

plaintiff's **Objection to Recommendation of Magistrate Judge** [#94], filed June 11, 2010, are **DENIED AS MOOT**;

5.  That plaintiff's claim for retaliation under Title VII is **DISMISSED WITH PREJUDICE**;

6.  That judgment **SHALL ENTER** against plaintiff, Kenneth Ware, in favor of defendants, Denver Health d/b/a Denver CARES and Mark Wright, as to plaintiff's claim for retaliation under Title VII;

7.  That the defendants **ARE AWARDED** their costs, which shall taxed in the time and manner prescribed in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

8.  That this case is **CLOSED**.

Dated July 12, 2010, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge
